UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCAS C. CHAMBERLAIN,

                              Plaintiff,

        -v-

SPLASHLIGHT, LLC, <u>et</u> <u>al.</u>,

                              Defendants.

CIVIL ACTION NO.: 23 Civ. 6318 (VEC) (SLC)

**<u>REPORT AND RECOMMENDATION</u>**

**SARAH L. CAVE,** United States Magistrate Judge.

**TO THE HONORABLE VALERIE E. CAPRONI**, United States District Judge.

## I. <u>INTRODUCTION</u>

This case began with a workplace relationship gone sour. From the halls of high fashion, <u>pro</u> <u>se</u> Plaintiff Lucas Chamberlain, a heterosexual hairstylist, claims Defendants Splashlight, LLC (his former employer), Michaela Krebs (his former supervisor and ex-girlfriend), and Bijou Summers (Splashlight's human resources representative) discriminated against him on the basis of sex and sexual orientation, sexually harassed and retaliated against him, and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 <u>et</u> <u>seq.</u> ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 <u>et</u> <u>seq.</u> ("NYCHRL"). He seeks monetary damages.

Defendants move to dismiss the Complaint (ECF No. 1) with prejudice. (ECF Nos. 52; 54 (the "Motions")). We respectfully recommend that the Motions be granted, and the Complaint be dismissed with prejudice without leave to amend.

## II. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

From December 12, 2020 to about December 20, 2022, Chamberlain worked as a hairstylist with Splashlight. (ECF No. 1-1 at 1, 3). Splashlight is "a fully-inclusive studio, liaison[,] and producer of first-rate marketing and advertising content for many of the world's most respected retailers, luxury brands, and fashion houses." (<u>Id.</u> at 1). Chamberlain, a hairstylist of 20 years, "cut and styled hair for numerous A-list celebrities and high fashion models for print and film media" while he worked with Splashlight. (<u>Id.</u>)

Although Chamberlain alleged that Splashlight considered him an independent contractor, he says he was "for all realistic intents and purposes, a direct employee of Splashlight" because he "had no other employment" while working with Splashlight, "worked a set schedule of days that was determined by Splashlight, [] reported directly to a supervisor who worked for Splashlight and who exercised full control over [his] working conditions, and [] was subject to written employment policies and practices" in Splashlight's employee handbook. (ECF No. 1-1 at 1). Splashlight issued Chamberlain paychecks, at a rate of $750 per workday, but did not deduct or withhold "state and federal income taxes and social security" payments. (<u>Id.</u>)

According to Chamberlain, heterosexual male hairstylists are a minority group in the high-fashion industry. (ECF No. 1-1 at 1). After thirteen months at Splashlight, Chamberlain started a consensual relationship with his direct supervisor, Defendant Michaela Krebs. (<u>Id.</u>) Krebs requested that the pair keep the relationship private and refuse to inform their superiors and co-workers because, as Krebs "warned" Chamberlain, "fraternization between employees, especially between supervisors and employees under their supervision, constituted a violation of

Splashlight's written employment policies and could result in disciplinary action against" either or both of them.  (Id.)  The relationship was rocky and ended after five months, around May 15, 2022.  (Id. at 1–2.)  Chamberlain alleged that Krebs "was not above leveraging her position of superiority within the Splashlight organization to get her way in [their] personal relationship, and . . . [she] leverag[ed their] romantic relationship as a sort of emotional blackmail within the workplace."  (Id.)  The pair met to discuss how to maintain their personal privacy in the workplace and not engage in gossip at each other's expense after the breakup.  (Id. at 2.)  Chamberlain alleged that Krebs "resented" him for ending the relationship and showed signs of "jealousy anytime she observed [Chamberlain] speaking with another female in the workplace."  (Id.)  It was then that Krebs "began to harass [Chamberlain] and retaliate against [him,]" even though he "maintained a professional attitude and respectful composure in the workplace at all times."  (Id.)

Specifically, on the night of September 10, 2022, Krebs sent Chamberlain "a series of text messages and called [him] claiming to be in distress and demanding to come over to [his] apartment."  (ECF No. 1-1 at 2).  Chamberlain believed Krebs was "in actual distress," and he "fear[ed] the consequences of retaliation in the workplace" if he did not allow Krebs into his apartment, so he acquiesced and told Krebs to come over.  (Id.)  When she arrived at his apartment, Krebs was visibly intoxicated, and Chamberlain suspected she may have been under the influence of drugs.  (Id.)  Krebs claimed that she merely "wanted to express her disappointment that [Chamberlain] had not wanted to rekindle [their] prior romantic affair."  (Id.)  After they spoke, Chamberlain allowed Krebs to sleep on his couch.  (Id.)  A few hours later, Chamberlain awoke to Krebs in his bed "making uninvited sexual advances toward[]" him.  (Id.)

3

The next day, Krebs told Chamberlain that her assistant at Splashlight, Ben Suster, was upset with Chamberlain and made false reports about Chamberlain to Splashlight's human resources staff.  (ECF No. 1-1 at 2).  Krebs told Chamberlain she did not know why Suster made the reports and she did not "prompt[]" Suster to "or request[]" that he make the reports.  (Id.)  Even so, Krebs "somehow knew the exact nature and details of the complaints" Suster made against Chamberlain, but she "claimed that, in light of [] Suster's actions, she was now taking steps to retaliate against him in [Chamberlain's] defense."  (Id.)

When Chamberlain returned to work for his next shift, Suster was waiting for him, "seated directly next to [Chamberlain's] workstation."  (ECF No. 1-1 at 3).  Suster seemed "well-informed of what had transpired" between Krebs and Chamberlain and "had been prepared to confront [Chamberlain] in a hostile manner."  (Id.)  Chamberlain told Suster that he should not have made false reports about him or engaged in "instigating behavior" in an attempt to "curry favor" with Krebs, particularly when she "claimed [] that she intended to retaliate against [Suster] for his actions against" Chamberlain.  (Id.)

On September 29, 2022, Chamberlain spoke to Defendant Bijou Summers, a Splashlight human resources representative, about Suster's reports.  (ECF No. 1-1 at 3).  Chamberlain "attempted to lodge complaints" against Krebs and Suster "for harassment, discrimination[,] and retaliation" during the meeting, but he was "utterly ignored and no action was ever taken on [his] behalf."  (Id.)  On October 5, 2022, Splashlight "cleared" Chamberlain "in writing of any alleged wrongdoing[,]"  and informed him that he "was eligible to be re-engaged for additional work[.]"  (Id.)  On October 14, 2022, Chamberlain emailed Summers, seeking to engage her on the

complaints he lodged against Krebs and Suster during their meeting on September 29, 2022.  (Id.)
Summers did not respond or take any action.  (Id.)

On December 20, 2022, Chamberlain received his final paycheck from Splashlight and
alleged that Suster's reports, which he made at Krebs' direction, were used to "support
[Splashlight's] decision not to engage [him] for future employment."  (ECF No. 1-1 at 3).
Chamberlain said that his "refusal to take part in [Krebs'] quid pro quo" romantic relationship
caused his "wrongful termination by constructive discharge[.]"  (Id. at 3–4).

**B.  Procedural Background**

On April 7, 2023, Chamberlain filed a charge of discrimination with the New York State
Division of Human Rights and United States Equal Employment Opportunity Commission
("EEOC") based on similar (but not identical) allegations to those presented in the Complaint.
(ECF No. 1-2).  On April 14, 2023, the EEOC dismissed the charge of discrimination and notified
Chamberlain of his right to sue.  (ECF No. 1-3).  Chamberlain received that notice on April 21,
2023.  (ECF No. 1 at 6).

On July 20, 2023, Chamberlain filed the Complaint against Defendants Splashlight, Krebs,
Summers, and Does 1–20 and brought four claims under Title VII, the NYSHRL, and the NYCHRL:
(1) for discrimination on the basis of sex and sexual orientation ("Discrimination Claims"); (2) for
retaliation ("Retaliation Claims"); (3) for quid pro quo sexual harassment ("Quid Pro Quo
Claims"); and, (4) for hostile work environment ("Hostile Work Environment Claims").  (ECF No.
1).  Splashlight and Summers then moved to dismiss the Complaint.  (ECF No. 16).  Judge Caproni
referred the case for general pretrial supervision and for a report and recommendation on the

motion to dismiss. (ECF No. 24). The Court denied the first motion to dismiss (ECF No. 16) without prejudice pending mediation (ECF No. 37).

On April 26, 2024, Defendants filed the Motions, seeking to dismiss the Complaint with prejudice. (ECF Nos. 52, 54). Judge Caproni entered an amended order referring the case for general pretrial supervision and for a report and recommendation on the Motions. (ECF No. 57). On April 29, 2024, the Court ordered Chamberlain to respond to the Motions by May 28, 2024, and warned him "that failure to file the Opposition will result in the Court ruling on the Motions based on Defendants' submission alone and may result in dismissal of this action with prejudice." (ECF No. 58 at 1). After he failed to respond, on June 10, 2024, the Court <u>sua</u> <u>sponte</u> extended the response deadline and warned Chamberlain "again that failure to file the Opposition will result in the Court ruling on the Motions based on Defendants' submission alone and may result in dismissal of this action with prejudice." (ECF No. 60). On July 12, 2024, the Court deemed "the Motions to be fully briefed" because "[t]o date, [] Chamberlain has not filed the Opposition, requested an extension of time to do so, or otherwise communicated with the Court." (ECF No. 65 at 2).

### III. <u>JURISDICTION AND VENUE</u>

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

### IV. <u>STANDARD OF REVIEW</u>

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if "the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief." <u>Sharikov v. Philips Medical Systems MR, Inc.</u>, 103 F.4th 159, 166 (2d

Cir. 2024).[1]  Although a plaintiff's "well-pleaded factual allegations" are taken as true, this obligation is "inapplicable to legal conclusions, such as threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)).

The Court "construe[s] a pro se complaint liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Pro se litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal." Brickhouse v. City of New York, No. 09 Civ. 9353 (NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010).

As noted, Chamberlain did not respond to the Motions.  Nonetheless, his failure to oppose the Motions does not alone merit dismissal of the Complaint.  See Goldberg v. Danaher, 599 F.3d 181, 183–84 (2d Cir. 2010); McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000).  "[T]he sufficiency of a complaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." Goldberg, 599 F.3d at 184 (citing McCall, 232 F.3d at 322–23).

## V. <u>DISCUSSION</u>

Defendants contend that Chamberlain failed to state a claim.  (See generally ECF Nos. 53; 54).  They are correct.

---

[1] Internal citations and quotation marks are omitted, and alterations are adopted throughout unless otherwise noted.

## A. **Threshold Arguments**

Before analyzing the plausibility of Chamberlain's claims, Defendants first argue that his Title VII claims should be dismissed because he was an independent contractor instead of a Splashlight employee, and they contend that Summers is not a proper defendant under Title VII, the NYSHRL, or the NYCHRL. (ECF No. 53 at 13–19). Defendants are wrong about Chamberlain but mostly right about Summers.

### 1. **Independent Contractor**

First, "the existence of an employer-employee relationship is a primary element of Title VII claims," and Title VII "covers employees, not independent contractors." Felder v. United States Tennis Assoc., 27 F.4th 834, 842 (2d Cir. 2022). Who is an employee? Courts "apply a set of non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship[.]" Id. at 843. The factors include:

> [T]he hiring party's right to control the manner and means by which the product is accomplished . . . .[;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

Id. (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751–52 (1989)) ("the Reid factors"). At the heart of the Reid factors lies "the element of control[,]" which tests "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment[.]" Id. The factors are just "a list of possible considerations that may

or may not be relevant in a given case[,]" and the Court must "disregard those factors that, in light of the facts of a particular case, are (1) irrelevant or (2) of indeterminate weight—that is, those factors that are essentially in equipoise and thus do not meaningfully cut in favor of either the conclusion that the worker is an employee or the conclusion that he or she is an independent contractor." Horror Inc. v. Miller, 15 F.4th 232, 248–49 (2d Cir. 2021).

Defendants fault Chamberlain for failing to specifically address several of the Reid factors, and they say the allegations that do address some factors are conclusory. They hang their hat on the fact that Chamberlain did not allege that Splashlight required him to work for it exclusively or that Splashlight controlled the "manner or means" of Chamberlain's work. (ECF No. 53 at 15). Defendants go on to say Chamberlain failed to allege how his Splashlight supervisor exercised "full control" over his work, what his working conditions were, whether Splashlight controlled the manner and means by which he styled hair, what skills are required to perform his job, how his supervisor oversaw his work, where he obtained the tools to complete his work, or whether he received employment benefits. (Id. at 15–16).

Recall that Chamberlain alleged Splashlight "hired" him "to work as a hair stylist," on "a set schedule of days . . . determined by Splashlight," under the direct supervision of a Splashlight employee "who exercised full control over [his] working conditions[.]" (ECF No. 1-1 at 1). Although Splashlight did not withhold or deduct "state and federal income taxes and social security" payments from the checks it regularly issued to Chamberlain for his work, Splashlight did issue Chamberlain checks for his work "at a rate of $750 per day . . . based on [his] total days worked per week on a regular basis." (Id.) Chamberlain was "subject to the written employment policies and practices set forth and published by Splashlight in an employee handbook" which

Splashlight delivered to him on his first day of work, and he participated in Splashlight's human resources complaint or dispute resolution processes.  (Id. at 1, 3).  Moreover, during the human resources process relating to Suster's complaints, Chamberlain was subject to Splashlight's internal investigatory processes that ultimately led to a finding of no wrongdoing, after which Splashlight informed Chamberlain he was "eligible to be re-engaged for additional work[.]"  (Id. at 3).  Taken together, Splashlight exerted substantial control over Chamberlain's working environment, when he could work, and under what conditions he could work.  To be sure, the Complaint could be more specific, but it is plausible enough that Chamberlain was a Splashlight employee for Title VII purposes.  See Ward v. Cohen Media Publications LLC, No. 22 Civ. 6431 (JLR), 2023 WL 5353342, at *5 (S.D.N.Y. Aug. 21, 2023) (concluding the plaintiff alleged facts sufficient at motion to dismiss stage about employer's control over her work to demonstrate employer-employee relationship under the Reid test); Hernandez v. Premium Merchant Funding One, LLC, No. 19 Civ. 1727 (WHP), 2020 WL 3962108, at *8 (S.D.N.Y. July 13, 2020) (same, and stating, "While other factors, such as . . . [the plaintiff's] tax treatment under IRS Form 1099, point toward the opposite conclusion, the Reid test is a fact intensive inquiry that requires additional information to make legal determinations.  Therefore, this issue is premature and better resolved after discovery.").

Understand that application of the Reid factors to the facts in the Complaint, taken as true, merely raises the curtain on the merits of Chamberlain's Title VII claims instead of pulling the hook on them before they reach the catwalk, nothing more.  Because the allegations demonstrate Splashlight exerted control over Chamberlain's work schedule, method of payment, and the duration of the work relationship between the parties as part of Splashlight's regular

business—coupled with the fact that Splashlight had authority to modify the terms and conditions of Chamberlain's employment—Chamberlain plausibly alleged he was a Splashlight employee for Title VII purposes.  See Hernandez, 2020 WL 3962108, at *8.  Accordingly, we respectfully recommend that Defendants' motions to dismiss on the basis of Chamberlain's status as an independent contractor be denied.

### 2. Summers

Defendants are correct that Summers is an improper defendant for most of Chamberlain's claims.  Under Title VII, only an employer and not individuals can be held liable.  Mira v. Kingston, 218 F. Supp. 3d 229, 235 (S.D.N.Y. 2016), aff'd, 715 F. App'x 28 (2d Cir. 2017) (summary order).  Courts also use the Reid factors to assess who is an employer.  See Gulino v. New York State Educ. Dep't, 460 F.3d 361, 379 (2d Cir. 2006) (determining whether an entity is an employer for the purpose of Title VII by using the common law of agency—the Reid test); see also Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 (2d Cir. 2008) ("[D]efinitions of 'employee,' 'employer,' and 'employment' are to be determined under the common law of agency[.]").  Summers is an individual, and Chamberlain alleged no facts showing she acted as his employer during the relevant period.  Accordingly, Summers cannot be held liable under Title VII.[2]

Under the NYSHRL, liability for employment discrimination lies with the employer alone, and corporate employees do not qualify as employers.  See Nezaj v. PS450 Bar & Rest., No. 22 Civ. 8494 (PAE), 2024 WL 815996, at *7 (S.D.N.Y. Feb. 27, 2024) (collecting cases).  The NYSHRL does, however,  permit individual liability  for  claims  of  retaliation.  See id. ("A]lthough the NYSHRL does not provide for direct liability for discrimination other than by

---

[2] The Title VII claims are deficient for the reasons discussed below.  Infra. Part V.B.

an 'employer,' it makes it unlawful for 'any person' to retaliate.") (citing N.Y. Exec. Law § 296(7)). Because Summers is a corporate employee and Chamberlain did not allege she was his employer during the relevant period, Summers can, at most, be held liable for retaliation under the NYSHRL.

Unlike federal anti-discrimination law and the NYSHRL, the NYCHRL permits individual liability for employees with supervisory authority for claims of both discrimination and retaliation.  See Nezaj, 2024 WL 815996, at *7 (explaining that the NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof . . . [t]o discriminate . . . in compensation or in terms, conditions or privileges of employment" (citing N.Y.C. Admin. Code § 8-107(1)(a)(3)); see also Russell v. New York Univ., No. 37, 2024 WL 1773218, at *7 (N.Y. Apr. 25, 2024).  Because Chamberlain did not allege that Summers had any supervisory authority, Summers cannot be held liable under the NYCHRL.

On, then, to the plausibility analysis on the merits of Chamberlain's claims.

## B. **Failure to State a Claim**

### 1. **Discrimination Claims**

Defendants first argue Chamberlain was not constructively discharged and that he failed to allege facts to support a "plausible inference of discrimination."  (ECF No. 53 at 21 (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015)).

Under Title VII, an employer may not discriminate against a person because of that person's sex or sexual orientation, among other things.  42 U.S.C. § 2000e-2(a)(1); Bostock v. Clayton Cnty., 590 U.S. 644, 652 (2020).  A claim for discrimination under Title VII is analyzed using the "now-familiar three-part framework set forth" in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802–04 (1973) (the "McDonnell Douglas framework"). Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 251 (2d Cir. 2014). Under this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). Once a plaintiff has met this burden, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." Id. (quoting McDonnell Douglas, 411 U.S. at 802). A plaintiff will satisfy his initial burden if he can show: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Id.

The McDonnell Douglas framework is an evidentiary standard, so at the motion to dismiss stage, "a plaintiff in a Title VII matter need not plead the elements of a prima facie case" under it. Zoulas v. N.Y.C. Dep't of Educ., 400 F. Supp. 3d 25, 52 (S.D.N.Y. 2019) (discussing discrimination claims under Title VII as compared to claims under Age Discrimination in Employment Act). Rather, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015); see also Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019). Therefore, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. Put differently, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 86. To do this, a plaintiff may

"alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  Id. at 87.

Discrimination claims under the NYSHRL, before its amendment in August 2019, and Title VII are generally considered "analytically identical." Farmer v. Shake Shack Enterprises, LLC, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019)); see also EEOC v. Bloomberg L.P., 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) (citing Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010)). Claims under the NYCHRL, and under the NYSHRL after it was amended, on the other hand, while analyzed using the same framework as Title VII, contain, "as to some elements, more liberal pleading and proof standards." Farmer, 473 F. Supp. 3d at 327; see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013); Europe v. Equinox Holdings, Inc., No. 20 Civ. 07787 (JGK), 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022).  Courts must "analyze NYCHRL claims separately and independently from any federal and state law claims," construing the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik, 715 F.3d at 109.  Therefore, where a plaintiff states a claim for discrimination under Title VII, he "necessarily" states a claim for discrimination under both the NYSHRL and NYCHRL.  Zuckerman v. GW Acquisition LLC, No. 20 Civ. 08742 (VEC), 2021 WL 4267815, at *7 (S.D.N.Y. Sept. 20, 2021).

For starters, all here agree that Chamberlain's employment relationship with Splashlight ended, but the Court need not reach whether Chamberlain plausibly alleged he was wrongfully terminated as a result of constructive discharge because his allegations do not raise a plausible inference of discrimination.

Chamberlain alleged that he was a "minority" at Splashlight because he is "a heterosexual male hairstylist in the industries of high fashion, A-list celebrity events and high-end luxury retail advertising"; the implication, then, is that the industry's majority are women, homosexual men, and non-binary persons.  Although it is not often a heterosexual man claims discrimination on the basis of his sex and sexual orientation, anti-discrimination laws allow Chamberlain to do so. See e.g., Roenick v. Flood, No. 20 Civ. 7213 (JPC), 2021 WL 2355108, at *1, 4–7 (S.D.N.Y. June 9, 2021); Cloutier v. Ledyard Bd. of Educ., 575 F. Supp. 3d 276 (D. Conn. 2021).  In Chamberlain's telling, "female employees of Splashlight and homosexual male employees of Splashlight" worked in concert to achieve his employment termination merely because he is a heterosexual man.  (ECF No. 1-1 at 1, 3–4).  Aside from conclusory allegations that Suster (whom Chamberlain alleges is a homosexual male for purposes of supporting his discrimination and harassment claims (see ECF No. 1-1 at 3)) made false reports against Chamberlain to human resources at Krebs' direction and that Summers and Splashlight ignored or did not act on his cross-complaints against Krebs and Suster, the Complaint contains no allegations tying Chamberlain's sex or sexual orientation to his employment termination, as opposed to some other reason.  Chamberlain's personal belief that his employment termination occurred because he is a heterosexual man, without more, does not give rise to a plausible inference of discrimination or discriminatory motivation.  See Lugo v. Lesbian & Gay Cmtys. Serv. Ctr., No 21 Civ. 7423 (VSB), 2023 WL 6648913, at *4 (S.D.N.Y. Oct. 12, 2023).

While we recognize that NYCHRL discrimination claims must be separately analyzed and subject to more lenient plausibility review than their Title VII and NYSHRL counterparts, see Mihalik, 715 F.3d at 109, Chamberlain's NYCHRL discrimination claim fares no better.  "To state

15

a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" Gorokhovsky v. N.Y.C. Hous. Auth., 552 F. App'x 100, 102 (2d Cir. 2014) (quoting Mihalik, 715 F.3d at 114); see also Mihalik, 715 F.3d at 110 ("[T]he conduct's severity and pervasiveness are relevant only to the issue of damages."). A plaintiff need only allege that he was treated "differently from others in a way that was more than trivial, insubstantial, or petty." Medcalf v. Thompson Hine LLP, 84 F. Supp. 3d 313,329 n.18; see also Bright-Asante v. Saks & Co., Inc., 242 F. Supp. 3d 229, 242 (S.D.N.Y. 2017) ("[T]o establish liability under the NYCHRL, 'the plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent.'" (first alteration in original) (quoting Makinen v. City of New York, 167 F. Supp. 3d 472, 483 (S.D.N.Y. 2016))). Even under this more forgiving pleading standard, however, Chamberlain must still plausibly allege that his worse treatment was "at least in part 'because of h[is]" belonging to a protected class. Mihalik, 715 F.3d at 110; see also Bright-Asante, 242 F. Supp. 3d at 242 ("Nevertheless, a plaintiff must still 'plead facts sufficient to support an inference that he has been treated less well at least in part because of' a protected trait.").

Chamberlain said he is a heterosexual man in an industry that is predominantly female and homosexual male; he carried on a relationship with his female direct supervisor that ended poorly; that direct supervisor's homosexual male assistant made reports of unknown content to Splashlight's human resources department (allegedly at the direction of Chamberlain's jilted direct supervisor); the human resources department did not respond to or act on Chamberlain's cross-complaints; and then, his employment with Splashlight ended within a matter of weeks.

16

(See generally, ECF No. 1-1).  Nowhere does Chamberlain tie his employment termination specifically to the fact of his sex or sexual orientation, as opposed to some other motivation, and the allegations viewed together do not give rise to a plausible inference of such discrimination. Absent allegations to that effect, Chamberlain failed to plead a plausible claim of sex or sexual orientation discrimination, even under the NYCHRL's liberal, plaintiff-friendly pleading standard. See Nezaj v. PS450 Bar and Restaurant, No. 22 Civ. 8494 (PAE), 2024 WL 815996, at *10–11 (S.D.N.Y Feb. 27, 2024) (dismissing NYCHRL sexual orientation discrimination claim because the complaint contained only conclusory allegations without any showing a defendant "actually participated in [sexual orientation] discrimination, let alone shared a discriminatory intent or purpose.").

Accordingly, we respectfully recommend that the Court grant the Motions as to the Discrimination Claims.

### 2.  Retaliation Claims

Chamberlain next alleged that he was retaliated against for engaging in protected activity. To state a claim for retaliation, a plaintiff generally must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Torre v. Charter Comms., Inc., 493 F. Supp. 3d 276, 288–89; see Zoulas, 400 F. Supp. 3d at 56–57.  As to his claims under the post-amendment NYSHRL and NYCRHL, Chamberlain need only allege that "[]he took an action opposing h[is] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112; see Arazi v. Cohen Bros. Realty Corp., No. 20

Civ. 8837 (GHW), 2022 WL 912940, at *17 (S.D.N.Y. Mar. 28, 2022). "The proper question for a retaliation claim is whether the [alleged action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019).

Regardless of whether the retaliation claim is brought under federal, state, or city law, it requires a causal connection between the alleged protected activity and the retaliatory conduct at issue. See Torre, 493 F. Supp. 3d at 288–89 (stating that Title VII, NYSHRL, and NYCHRL retaliation claims require "a causal connection"); Mihalik, 715 F.3d at 112 (holding that the NYCHRL requires that retaliation was taken "as a result" of protected activity); Arazi, 2022 WL 912940, at *17 (holding that the NYCHRL requires "a causal connection between the protected activity and the alleged retaliatory conduct."). "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018).

Defendants contend that the Complaint lacks allegations connecting Chamberlain's supposed protected activity to his employment termination—and they are correct again. Chamberlain appears to allege he engaged in protected activity when he made cross-complaints of "harassment, discrimination[,] and retaliation" against Krebs and Suster. (ECF No. 1-1 at 3). Defendants knew he made the complaints, and Chamberlain said Splashlight's "decision not to engage [him] for future employment" amounted to adverse employment action. (Id. at 2–3). The claim, however, falls short on causation. On October 5, 2022—after Suster complained, Chamberlain spoke with human resources, and Splashlight investigated—Splashlight "cleared [Chamberlain] of any wrongdoing" and informed him he "was eligible to be re-engaged for

additional work[.]"  (Id.)  Then, on October 14, 2022, Chamberlain emailed Summers one more time to follow up on his cross-complaints against Suster and Krebs, which went unanswered or were not acted upon.  (Id. at 3).  On December 20, 2022, Chamberlain received his last paycheck from Splashlight.  (Id.)  Apart from conclusory assertions, no allegations link Chamberlain's cross-complaints with Splashlight's decision not to re-engage him for future work.  Defendants argue "it is entirely plausible that Splashlight chose not to re-engage [Chamberlain] for additional work as a result of the fact that he sent [] Krebs 'approximately 70 text messages . . . (without reply) on September 25, 2022, during the 'cooling off period' . . . and while [Splashlight's] internal investigation was ongoing.'"  (ECF No. 53 at 26 (citing ECF No. 1-2 at 3)).  Whatever Splashlight's reason, Chamberlain did not plausibly allege that it decided not to re-engage him for work <u>because of</u> his cross-complaints against Krebs and Suster (the supposed protected activity). Therefore, we respectfully recommend that the Court grant the Motions as to the Retaliation Claims.

### 3.  **Quid Pro Quo Claims**

"<u>Quid pro quo</u> sexual harassment occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual.'"  <u>Girardi v. Ferrari Exp., Inc.</u>, No. 20 Civ. 4298 (VSB)20, 2023 WL 2744027, at *5 (S.D.N.Y. Mar. 31, 2023) (quoting <u>Karibian v. Columbia Univ.</u>, 14 F.3d 773, 777 (2d Cir. 1994)).  "To establish <u>quid pro quo</u> harassment under Title VII and the NYSHRL, 'it is enough to show that the supervisor used the employee's acceptance or rejection of h[er] advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job.'"  <u>Friederick v. Passfeed, Inc.</u>, No. 21 Civ. 2066 (RA), 2022 WL 992798, at *7 (S.D.N.Y.

2022) (quoting <u>Perks v. Town of Huntington</u>, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003)).  <u>See</u> <u>also</u> <u>Cooper v. N.Y. State Dep't of Labor</u>, 819 F.3d 678, 680 n.3 (2d Cir. 2016) ("Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . . Title VII."); <u>Figueroa v. RSquared NY, Inc.</u>, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (applying Title VII standard for <u>quid pro quo</u> harassment claim brought under the NYSHRL).

In short, "[t]he issue in a <u>quid pro quo</u> case is whether the supervisor has expressly or tacitly linked tangible job benefits to the acceptance or rejection of sexual advances; a <u>quid pro quo</u> claim is made out whether the employee rejects the advances and suffers the consequences or submits to the advances in order to avoid those consequences."  <u>Bouveng v.</u> <u>NYG Cap. LLC</u>, 175 F. Supp. 3d 280, 311 (S.D.N.Y 2016).  "'Tangible employment actions' include 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" <u>Id.</u>  Notably, "employment decisions predicated upon the existence or termination of <u>consensual</u> <u>romantic relationships</u>, however, do not constitute <u>quid pro quo</u> sexual harassment."  <u>Id.</u> (quoting <u>Kahn v. Objective Solutions Int'l</u>, 86 F. Supp. 2d 377, 380 (S.D.N.Y. 2000)) (alterations adopted and emphasis added).  "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'"  <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 68 (1986).

Taking the Title VII and NYSHRL <u>quid pro quo</u> analysis first, Chamberlain and Krebs entered a consensual romantic relationship, despite their employment relationship as supervisor and employee.  (<u>See generally</u>, ECF No. 1-1).  The relationship ended several months later.  (<u>Id.</u>) Chamberlain said Krebs reacted poorly—evidenced by the events of September 10, 2022, when she feverishly text and called him asking to meet.  (ECF No. 1-1 at 2).  When they met at

Chamberlain's apartment, the pair spoke about Krebs' wish to rekindle the relationship and Suster's complaints against Chamberlain. (Id.) Chamberlain let Krebs use his couch to sleep but Krebs eventually "moved into [Chamberlain's] bed and began making uninvited sexual advances[.]" (Id.) Then came Chamberlain's cross-complaints against Krebs and Suster and the Splashlight internal investigation into Suster's complaints. (Id. at 3).

Chamberlain did not submit to unwelcome sexual advances, so he must show his rejection of Krebs' sexual advances were "expressly or tacitly linked" to Splashlight's decision not to re-engage him for future work. Bouveng, 175 F. Supp. 3d at 311. The Complaint contains just one instance of Krebs making a sexual advance (when she got into bed with him on the night of September 10, 2022), and there is no allegation that he accepted or rejected the advance, only that it was "unwelcome." (ECF No. 1-1 at 2). The pair seemingly had a volatile relationship, but Chamberlain failed to allege facts linking Krebs' unwelcome sexual advance to his separation from Splashlight (or any other tangible employment action)—especially because Splashlight "cleared [him] of any wrongdoing and [said he] was eligible to be re-engaged for additional work" before ultimately ending their employment relationship. (Id. at 3). The Quid Pro Quo Claims thus fail under Title VII and the NYSHRL.

The NYCHRL "does not distinguish quid pro quo claims from hostile work environment ones, focusing instead on 'unequal treatment based on gender.'" Villalta v. JS Barkats, P.L.L.C., No. 16 Civ. 2772 (RA) (RWL), 2021 WL 2458699, at *10 (S.D.N.Y. Apr. 16, 2021), adopted sub nom., 2021 WL 2458023 (June 16, 2021). "Nonetheless, a quid pro quo claim is actionable under the NYCHRL as long as the plaintiff has received unequal treatment based on h[is] gender." Id. Allegations that a plaintiff "was treated less well because of a discriminatory intent"

is sufficient to establish discrimination under the NYCHRL.  MacAlister v. Millenium Hotels & Resorts, No. 17 Civ. 6189 (ER), 2018 WL 5886440, at *8 (S.D.N.Y. Nov. 8, 2018) (quoting Workneh v. Super Shuttle Int'l, Inc., No. 15 Civ. 3521 (ER), 2016 WL 5793744, at *9 (S.D.N.Y. Sept. 30, 2016)).  To muddy the waters, Chamberlain mentions both sexual harassment and discrimination in the Complaint, which the Court recently concluded are not interchangeable terms under the NYCHRL.  Singh v. Meetup LLC, No. 23 Civ. 9502 (JPO), 2024 WL 3904799 at *4–7 (S.D.N.Y. Aug. 22, 2024).

The Quid Pro Quo Claims fail under the NYCHRL too.  The Complaint lacks allegations showing that Chamberlain suffered sexual harassment in the workplace (or that Splashlight and Summers knew about or participated in any such harassment), linking Krebs' sexual advance at Chamberlain's apartment to unequal treatment on-the-job, or stating how he was treated differently from comparators.  Chamberlain relies on incomplete, threadbare, and conclusory allegations as to Splashlight and Summers.  Although Chamberlain alleges Krebs made an unwanted sexual advance on him, he did not allege whether he rejected it and he did not tie it to the human resources dispute process he was involved in.  Moreover, Splashlight "cleared [him] of any wrongdoing and [said he] was eligible to be re-engaged for additional work" before ultimately ending their employment relationship.  (ECF No. 1-1 at 3).  We respectfully recommend that the Court grant the Motions as to the Quid Pro Quo Claims.[3]

---

[3] Krebs points to inconsistencies in Chamberlain's EEOC charge (compare ECF No. 1-1 with ECF No. 1-2) to support the proposition that he alleged new facts in the Complaint which he did not allege before, necessitating dismissal of his quid pro quo claims for both failing to exhaust administrative remedies and relying on "glaring contradictions" that render the Complaint "non-actionable."  (ECF No. 55 at 6–7).  She relies on just one case to support each argument, but the Court need not reach them because Chamberlain's claims fail under the plausibility analysis.

### 4. **Hostile Work Environment Claims**

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). Personal animus without plausible allegations of discriminatory bias on the basis of a protected characteristic is insufficient to establish a hostile work environment claim. See Lennert-Gonzalez v. Delta Airlines, Inc., No. 11 Civ. 1459 (JMF), 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013).

The same standard applies to hostile work environment claims under the NYSHRL before the statute's amendment, see Williams v. N.Y.C. Hous. Auth., No. 18 Civ. 05912 (JGK) (RWL), 2021 WL 1109842, at *20 (S.D.N.Y. Mar. 23, 2021) ("Prior to amendments made to the NYSHRL that took effect on October 11, 2019, NYSHRL hostile environment claims were analyzed in essentially the same manner as hostile work environment claims under Title VII[.]"). Under the NYCHRL, and the NYSHRL after October 2019, however, a plaintiff need not allege that the harassing or discriminatory conduct was "severe or pervasive for it to be actionable." Williams, 2021 WL 1109842, at *20 (NYSHRL); Small v. New York City Dep't of Educ., No. 21 Civ. 01527 (GHW), 2023 WL 112546, at *8 (S.D.N.Y. Jan. 5, 2023) (NYCHRL).

To determine whether Chamberlain has stated a claim for a hostile work environment on the basis of sex or sexual orientation, the Court must consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Littlejohn, 795 F.3d at 321. "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. A "plaintiff need only plead facts sufficient to support the conclusion that []he was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of h[is] employment altered for the worse," and has "repeatedly cautioned against setting the bar too high." Patane, 508 F.3d at 113.

Chamberlain alleged just one instance, on September 10, 2022, when Krebs attempted an uninvited sexual advance, and it occurred outside work hours on personal—not company—property. (See generally, ECF No. 1-1). His allegations support an inference that his work environment may have been socially uncomfortable after his relationship with Krebs ended, but Chamberlain did not allege any specific instances of discriminatory conduct or unequal treatment at work because of his status as a heterosexual man. Accordingly, we respectfully recommend that the Court grant the Motions as to the Hostile Work Environment Claims. Simon v. City of New York, No. 17 Civ. 9575 (DAB), 2019 WL 916767, at *10 (S.D.N.Y. 2019) (dismissing hostile work environment claim under Title VII, the NYSHRL, and the NYCHRL for allegations of only stray discriminatory remarks and failure to plead allegations of discriminatory motive and unequal treatment based on sex).

### C. Leave to Amend

Chamberlain has not requested leave to amend the Complaint (because he has not responded to the Motions), and we do not recommend granting leave to amend either.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014). "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 62 (2d Cir. 2016) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).

The Court twice warned Chamberlain that failure to respond to the Motions "may result in dismissal of this action with prejudice[,]" and still he did not respond, failed to meet deadlines throughout the case, and only sporadically appeared to prosecute his case. (See ECF Nos. 30; 41; 44; 50; 58; 60; 65). Moreover, Chamberlain was aware of Defendants' arguments for dismissal and the potential pleading deficiencies in the Complaint when they first moved to dismiss (ECF Nos. 16; 17), but he did not seek leave to amend the pleadings before Defendants filed the Motions.

For the reasons set forth above, and considering Chamberlain's conduct in his own case, leave to amend the Complaint would be futile and should not be granted. See Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here [a] plaintiff is unable to demonstrate he would

be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

**VI. <u>CONCLUSION</u>**

Accordingly, we respectfully **RECOMMEND** that the Motions (ECF Nos. 52; 54) be **GRANTED** and that the Complaint be **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

Dated:      New York, New York
            October 10, 2024

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Plaintiff does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from Defendants' counsel.  See Local Civ. R. 7.2.